UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tuffy Associates Corp.,            Case No. 3:11cv2423

        Plaintiff

   v.                              MEMORANDUM OPINION
                                        AND ORDER

RLHJR Enterprises, L.L.C., et al.,

        Defendants

### BACKGROUND

On September 27, 2012, I issued an order granting in part and denying in part the motion of Plaintiff Tuffy Associates Corp. ("TAC") for summary judgment against Defendants RLHJR Enterprises, L.L.C. ("RLHJR") and Robert L. Harris, Jr. ("Harris") (collectively, "the Defendants") pursuant to Fed. R. Civ. Pro. 56. (*See* Doc. No. 38). I concluded TAC demonstrated there was not a genuine dispute as to any material fact regarding the Defendants' execution and subsequent breach of a license agreement, a sublease, and a guaranty agreement. (Doc. No. 38 at 5). I also concluded TAC failed to prove there was not a genuine dispute of material fact regarding the appropriate amount of damages to be awarded. (Doc. No. 38 at 6). Harris and RLHJR argued they were entitled a "credit or an off-set" against TAC's claim for damages because TAC "seized nearly $100,000.00 in personal property belonging to Harris." (Doc. No. 30 at 1). TAC responded Harris was not entitled to a credit because the property was abandoned, and not seized, but failed to produce any evidence or legal argument in support of that position. (Doc. No. 31 at 6-7).

Following a status conference with counsel for the parties, I set a schedule for supplemental briefing on the issue of damages.  (Doc. No. 40).  Subsequently, TAC filed a supplemental memorandum.  (Doc. No. 41).  Harris and RLHJR filed a response.  (Doc. No. 42).  TAC then filed a reply.  (Doc. No. 43).

## ANALYSIS

### A.  AMOUNT OF DAMAGES

TAC seeks damages in the amount of $188,567.57.  (Doc. No. 43 at 4).  As an initial matter, Harris and RLHJR disagree with my conclusion in the summary judgment order that TAC has proven the amount of damages resulting from the Defendants' breach of the license agreement, sublease, and guaranty.  (*See* Doc. No. 42 at 2).  Harris and RLHJR, however, fail to identify any specific objections or to produce any evidence in opposition to TAC's offer of proof.  Instead, the Defendants again offer an affidavit from Harris claiming TAC did not record rental payments made between March 2011 and February 2012 totaling approximately $10,650.00, and did not credit his account for a $10,200.00 security deposit Harris delivered pursuant to the sublease.  (Doc. No. 42-1 at 2-3).  Harris states he believes he is entitled to additional rent credits, but cannot provide more information because he does not have access to his business computers.  (Doc. No. 42-1 at 3).  Harris also claims "TAC's accounting reflects charges for rent for April 2012.  However, this rent was paid."  (Id.)

TAC provided copies of monthly Check Application Reports for Harris's account, which track the assessment of charges and the applications of payments to the account from August 1, 2009 through May 31, 2012.  (Doc. No. 31-1 at 5-35).  Those reports indicate TAC applied partial rental payments in the amount of $11,900.00 to Harris's account between March 2011 and February 2012.  (Doc. No. 31-1 at 22-33).  TAC's records also demonstrate Harris's security deposit was applied to his account in March 2012 to cover past-due rent for March and April 2011.  (Doc. No. 31-1 at 34).  Additionally, TAC applied rental payments in the amount of $824.59 to Harris's

2

account in March 2012. (Id.) Finally, Harris's claim that the rent for April 2012 was paid is clearly rebutted by (1) TAC's standard accounting practice, under which payments are applied to the balance that has been delinquent for the longest period of time, and (2) the fact that the Check Application Report lists a "credit" payment number and states "clear April rent – [location] closed" on the "Check Description" line, instead of providing an electronic transfer or check number.[1] (Doc. No. 31-1 at 35). By providing business records of payments to and the balance due on Harris's account, TAC has produced persuasive evidence in support of its claim for damages. I conclude TAC is entitled to a damage award in the amount of $188,567.57.

**B. CREDIT FOR THE VALUE OF PERSONAL PROPERTY**

The Defendants claim they "are entitled to receive a credit for certain property and assets seized by TAC during the course of this litigation."[2] (Doc. No. 42 at 2). Harris and RLHJR argue "TAC as the purported judgment creditor has an affirmative duty to apply" a credit for the fair market value of the property. (Doc. No. 42 at 5). The Defendants also argue "TAC, as a creditor, has an affirmative duty to dispose of the collateral it has seized from the Defendants in a commercially reasonable manner and to apply the fair market value of the collateral towards the indebtedness." (Doc. No. 42 at 6-7). The Defendants assert that the fair market value of the property at issue is $96,284.92, and request a credit in that amount "against any judgment levied in this case, or in the alternative, that an evidentiary hearing be held to determine the fair market value of the property to be credited against the judgment." (Doc. No. 42 at 7). It appears the items whose values constitute the amount the Defendants seek are (1) the security deposit made under the sublease ($10,200.00); (2) machinery and equipment the Defendants leased from Advantage Leasing

---

[1] Further, Harris does not claim he paid the rent due or even suggest who else might have made the payment for him.

[2] The Defendants state that, to their knowledge, "TAC has not disposed of, in whole or in part, any of the seized assets." (Doc. No. 42 at 3).

($38, 584.91)[3]; (3) inventory, including automotive parts and products ($2,500.00); (4) a Tuffy Auto Center sign ($17,000.00); and (5) office equipment and furniture ($28,000.00). (Doc. No. 42-1 at 3-4).

TAC does not appear to disagree with the general thrust of the Defendants' arguments, as TAC states "[t]he appropriate value for liquidation of the assets will be based on sales conducted as required by statute . . . ." (Doc. No. 43 at 3). Where the parties differ involves the appropriate time at which the amount of credit due should be determined. TAC states "[t]here is no legal basis requiring a 'purported judgment creditor' to determine in advance the amount of the credit against its judgment . . . ." (Id.) Instead, TAC argues judgment should be entered in its favor in this case, and then it will "exercise its rights as a judgment creditor to foreclose on the landlord lien under Florida law (Fla. Stat. §83.08) and otherwise execute on the assets of the Defendants and credit the Defendants as any judgment creditor is required to do." (Doc. No. 43 at 1-2).

As I noted above, TAC's records demonstrate Harris's security deposit was applied to his account in March 2012 to cover past-due rent for March and April 2011. (Doc. No. 31-1 at 34). The amount of the security deposit has been accounted for, and is of no further relevance to the amount the Defendants owe.

In my order on TAC's motion for summary judgment, I noted the Defendants admit they do not hold title to the equipment they leased from Advantage Leasing. (Doc. No. 38 at 5; *see also* Doc. No. 30 at 9). TAC has produced evidence of a lawsuit filed by Advantage Leasing against Harris in a Florida circuit court concerning the leased equipment, as well as evidence of a default judgment entered against Harris in that case. (Doc. No. 41-2 at 70-73). The Defendants fail to address this issue. Nevertheless, they astonishingly continue to claim they are entitled to a credit for the value of that equipment against the amount they owe to TAC. I cannot conceive of any reason why that is

---

[3] This amount is the difference between the estimated value of the property and the amount the Defendants owe to Advantage Leasing on the lease. Harris estimates the value of the machinery and equipment to be at least $92,000.00. (Doc. No. 42-1 at 3). Harris also represents that RLHJR owed $53,415.09 to Advantage Leasing as of May 16, 2012. (Id.)

4

so. The amount of the lease payments the Defendants made to Advantage Leasing is not relevant to the calculation of the damages the Defendants owe to TAC in this case.

The Defendants also seek a credit for the estimated resale value of a Tuffy Auto Center sign located at the service center the Defendants previously operated. Under the license agreement, the Defendants agreed "that all sign faces and other items bearing the Tuffy Marks are the sole property of [TAC]. On expiration of termination of this Agreement, [Harris and RLHJR] must deliver to [TAC] or destroy sign faces and other items bearing the Tuffy Marks." (Doc. No. 1-6 at 12). The Defendants provide no argument in support of their claim for a credit based on the estimated value of the sign. The sign belongs to TAC and its value is not relevant to the calculation of damages the Defendants owe in this case.

The remaining disputed property for which the Defendants seek a credit is located in Florida. The record in this case does not contain sufficient evidence of the quantity or quality of those items to permit me to estimate their value. Further, the Defendants have not offered any persuasive arguments that might convince me it is more appropriate to assess the value of those items during this litigation rather than during TAC's efforts to collect on the judgment to which it is entitled. The value of those items will be determined at a liquidation sale conducted pursuant to Florida law.

### C. ATTORNEY FEES AND EXPENSES

TAC has requested attorneys' fees and legal expenses in the amount of $10,159.07, and has submitted invoices in support of its request. (Doc. No. 45). Generally, Ohio law requires each party to pay the party's own attorney's fees. *See, e.g., McConnell v. Hunt Sports Enters.*, 725 N.E.2d 1193, 1235 (Ohio App. 1999). There are several exceptions, however, including "when contractual provisions between the parties shift the costs . . . ." *Id.* The license agreement and the sublease contain choice of law provisions stating that Ohio law applies to the construction of the contracts. (Doc. No. 1-6 at 36; Doc. No. 1-8 at 10). Those agreements also require the Defendants to pay all

costs incurred by TAC in enforcing those agreements, including attorneys' fees and legal expenses. (Doc. No. 1-6 at 37; Doc. No. 1-8 at 11).

TAC's request consists of $9,661.50 in attorneys' fees and $497.57 in costs. (Doc. No. 45 at 1-3). TAC provided copies of the fee and cost invoices it received from its attorneys during the course of litigation, and seeks to recover fees charged by three attorneys and one paralegal. The rates charged and hours billed appear reasonable, and the Defendants have not offered any arguments in opposition to TAC's fee request. The contracts between the parties provide for the assessment of attorneys' fees and legal expenses against Harris and RLHJR and I conclude the documentation TAC has submitted supports its request.

## CONCLUSION

For the reasons stated above, I conclude TAC is entitled to judgment in the amount of $198,726.64, composed of $188,567.57 in damages and $10,159.07 in attorneys' fees and legal expenses.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge